IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANTHONY MYKAEL BOND          )
                             )
        v.                   )          NO. 3:13-0734
                             )
DERRICK SHOFIELD, et al.     )


TO:  Honorable Todd J. Campbell, District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered August 5, 2013 (Docket Entry No. 4), this prisoner civil rights action was referred to the Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is a motion to dismiss (Docket Entry No. 41) filed by Defendants Derrick Schofield, Jason Woodall, John Fisher, Roland Colson, David Castile, Terry Puckett, Jason Alan Smith, Hiram Tennyson III and Warren Tate. The plaintiff has filed a response in opposition to the motion. See Docket Entry No. 48. For the reasons set out below, the Court recommends that the motion be granted and this action be dismissed.

# I. BACKGROUND

The plaintiff, proceeding pro se and in forma pauperis, is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the Morgan County Correctional Complex in Wartburg, Tennessee. He filed this action under 42 U.S.C. § 1983 for violations of his constitutional rights alleged to have occurred during his confinement at the Riverbend Maximum Security Institution in 2012 and 2013. Named as defendants are TDOC Commissioner Derrick Schofield, TDOC Internal Affairs officers Jason Woodall, and John Fisher, RMSI Warden Roland Colson, RMSI Internal Affairs officer Terry Puckett, and RMSI officers David Castille, Jason Smith, Warren Tate, Harry Jones, and Hiram Tennyson.

The following facts are gleaned from the allegations in the plaintiff's complaint and the documents attached to the complaint. On or about January 23, 2012, the plaintiff was transferred from the TDOC's Turney Center Industrial Prison & Farm ("Turney Center") to the RMSI after his security classification was increased from medium to close security because of a disciplinary conviction he received at the Turney Center. After his arrival at RMSI, he was reclassified to maximum security and placed on administrative segregation upon the recommendation of Warden Colson, who stated the reasons for recommending that the plaintiff be placed in administrative segregation as follows:

> Inmate Bond has demonstrated an assaultive nature on staff that creates concerns for the safety and security of the facility. Bond needs to be placed on AS to ensure continued safety is upheld.

See Docket Entry No. 1-2. Disciplinary board members David Castille, Harry Jones, and Hiram Tennyson approved the recommendation. Id. The plaintiff remained on administrative segregation

2

until March 27, 2012, when he was reclassified to close security and released from administrative segregation.

After a few months, the plaintiff was again placed on maximum security and returned to administrative segregation upon the recommendation of Warden Colson. In a written recommendation report dated June 1, 2012, Warden Colson stated the reasons for recommending the plaintiff's placement in administrative segregation as follows:

> Bond, Anthony #249793 was transferred to RMSI from TCIX due to heavy recruiting activity by Inmate Bond during Islamic religious services. Inmate Bond is a 33 year old Black Male serving Life without Parole for Murder 1st, Aggravated Robbery (11 counts) and Theft from Shelby County. Inmate Bond is a confirmed member of the Black Guerilla Family and has ties to the newly recognized Security Threat Group, the New Black Panther Party. Based on his ties to militant Anti-Government organizations, his lengthy sentence for violent offenses and his STG related recruiting activity inmate Bond requires a higher degree of supervision than can be accomplished on Close custody. The reason for AS Placement is that this inmate is believed to pose a serious risk to the security and good order of the Institution and Safety of other inmates and staff.

See Docket Entry No. 1-3. Disciplinary board members David Castille, Jason Smith, and Warren Tate approved the recommendation. Id. The plaintiff's placement on administrative segregation was reviewed monthly at the RMSI by his counselor, a panel of two prison officials, and the warden until he was transferred to the Bledsoe County Correctional Complex ("Bledsoe") on or about June 11, 2013. See Docket Entry No. 1-11 It appears from a recent filing by the plaintiff that he remained on maximum security in administrative segregation at Bledsoe until at least November 2013. See Docket Entry No. 48-1, at 3 and 10.

The plaintiff contends that his placement in administrative segregation is unfounded and that he has never been given any factually specific explanations about why he was placed in administrative segregation. He complains that prison policies were not followed, that the hearings

held upon his placement in administrative segregation and his review hearings have been "mock" hearings where Warden Colson's recommendations were not questioned, and that the two recommendations made by Warden Colson are not factually consistent. He asserts that his appeals, inquires, grievances, and letters about the matter, as well as his wife's letter, did not result in any further explanations from prison officials or any change in his situation. The plaintiff also alleges that, while in administrative segregation at RMSI, he was not permitted to move from "Level III" to "Level II" because an internal affairs hold had been lodged against him, yet a white inmate who had a similar hold was a Level II inmate. The plaintiff claims that, as a result, his First, Eighth, and Fourteenth Amendment rights have been violated, and he seeks monetary as well as injunctive relief. See Complaint (Docket Entry No. 1), at 9.

In conjunction with their answer (Docket Entry No. 43), the Defendants[1] filed the pending motion to dismiss asserting that the plaintiff fails to state a claim upon which relief can be granted. First, they argue that the plaintiff's claims are barred by Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), and Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), to the extent that his claims would, if found in his favor, call into question the validity of the prison disciplinary convictions he received at the Turney Center. Second, the Defendants contend that a prison inmate does not have a protected constitutional interest in being incarcerated at a particular prison or in having a specific security classification. Finally, the Defendants argue that the plaintiff's allegations fail to show that he was the victim of any purposeful discrimination based on his race.

---

[1] The motion to dismiss and answer have been filed on behalf of all defendants except for Harry Jones, who appears to have been served on October 29, 2013, see Docket Entry No. 40, but who has not appeared in the action.

In response, the plaintiff asserts that he is not seeking to overturn his disciplinary convictions and, thus, his claims are not barred by Heck and Balisok. To the contrary, he argues that his claim is based on allegations that he has been held in administrative segregation for an indefinite period of time without any proof by prison officials that he committed a disciplinary offense or any proof justifying his continued segregation. He further contends that the length of his segregation, the lack of any proof of wrongdoing against him, and the lack of any explanation of why he has an internal affairs hold against him require prison officials to provide him with procedural protections. Finally, he argues that his allegations of racial discrimination adequately state a claim for relief given that he has specifically identified a white inmate who he alleges was treated differently than the plaintiff by being placed on Level II while in administrative segregation. See Docket Entry No. 48.

## II. STANDARD OF REVIEW

A motion to dismiss is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in the plaintiff's favor, and construe the complaint liberally in favor of the pro se plaintiff. See Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006); Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). However, although the complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for his entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The factual allegations supplied must be enough to show a plausible right to relief. Twombly, 550 U.S. at 555-61. More than bare assertions of legal conclusions are required to withstand a motion to dismiss and the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id.; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436-37 (6th Cir. 1988). The Court need not accept as true legal conclusions or unwarranted factual inferences. See Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000), abrogated in part on other grounds, Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

## III. CONCLUSIONS

After review of the parties' filings and the record in this action, the Court finds that the motion to dismiss should be granted. Although the Court is required to construe the Complaint liberally because of the plaintiff's pro se status, Boag v. McDougall, 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982), and even though the plaintiff's factual allegations are construed as true when reviewing the motion to dismiss, the plaintiff must "do more than create speculation or suspicion of a legally cognizable cause of action; [he] must show entitlement to relief." League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citing Twombly, 550 U.S. at 555). The plaintiff has not met this burden based on the facts set out in his Complaint.

Initially, the Court finds that the plaintiff's claims are not barred from being heard by the Heck/Balisok doctrine. Under this doctrine, a civil claim that directly or indirectly challenges the duration of a prisoner plaintiff's imprisonment cannot be brought under 42 U.S.C. § 1983. See

LaFountain v. Harry, 716 F.3d 944 (6th Cir. 2013). Challenges to prison disciplinary convictions fall under this doctrine if a result in the plaintiff's favor would necessarily impact the duration of his prison sentence regardless of whether the plaintiff seeks monetary and declaratory relief, Balisok, supra, or the actual restoration of sentence reduction credits that were taken away as a punishment for the conviction. See Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In the instant action, the plaintiff does not challenge the prison disciplinary proceedings that occurred at the Turney Center nor does he seek the restoration of any sentence reduction credits.[2] A ruling in his favor on his claims would not have any impact on the duration of his current prison sentence.

The plaintiff disputes that there was a valid reason for his placement in administrative segregation and disputes that he was afforded proper procedural protections upon his placement in administrative segregation. He further contends that prison policies were not followed and that his continued placement in administrative segregation is unsupported and unconstitutional. Even though these claims may properly fall within the scope of an action brought under Section 1983, the plaintiff's allegations fail to support a constitutional claim.

The failure of a prison official to follow an internal prison policy is not sufficient to support a constitutional claim. See Black v. Parke, 4 F.3d 442, 448 (6th Cir. 1993); Barber v. City of Salem, Ohio, 953 F.2d 232, 240 (6th Cir. 1992). Thus, the plaintiff's allegation that prison officials did not follow TDOC policy does not support a cognizable claim under Section 1983. Additionally, a

---

[2] Although the plaintiff states in his Complaint that he seeks to be "placed back in General prison population with all of my privileges restored to me the same as others in General population including but not limited to Good and Honor time," See Docket Entry No. 1, at 9, he does not seek the restoration of any sentence credits that were already earned but were taken from him, but merely to be put in a position that allows him the opportunity to earn good and honor time credits. Such a request does render his claim within the scope of Heck/Balisok.

prisoner has no constitutional right to be held in a specific security classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); Dominque v. Weld, 73 F.3d 1156, 1160 (6th Cir. 1996); Newell v. Brown, 981 F.2d 880, 883 (6th Cir. 1992); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir. 1986). Thus, the plaintiff's allegations about being held in maximum security likewise do not support a cognizable claim under Section 1983.

The Defendants also contend that a prison inmate has no constitutional right to be incarcerated at any particular institution. See Docket Entry No. 42, at 6. In his response to the motion, the plaintiff argues that he has stated a claim based upon his transfer between prisons. See Docket Entry No. 48, at 2. However, in his complaint, the plaintiff does not actually assert a claim based on his transfer from the Turney Center to the RMSI. Even if a claim based upon the plaintiff's objection to being transferred to the RMSI had been included in the complaint, such a claim would warrant dismissal. A prison inmate has no constitutional right to be confined in any particular correctional institution, and the mere complaint about a prison transfer does not raise a constitutional concern. See Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005); Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Ward v. Dyke, 58 F.3d 271 (6th Cir. 1995).

With respect to constitutional due process protections, the Fourteenth Amendment's Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. See Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). The specific manner of an inmate's confinement while in prison is generally a matter for the discretion of prison officials and does not implicate due process protections. See Carter v. Tucker, 69

Fed.Appx. 678 (6th Cir. July 1, 2003); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir. 1995);

Ward v. Dyke, 58 F.3d 271, 274 (6th Cir. 1995). In Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct.

2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that a prisoner is entitled to the protections

of due process only when the complained about deprivation imposes an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Without a protected liberty interest, a prisoner-plaintiff cannot successfully claim that his due

process rights were violated because "[p]rocess is not an end in itself." Olim v. Wakinekona, 461

U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

It is by now well settled that an inmate's placement in administrative segregation normally

does not give rise to a protected liberty interest because such a placement does not constitute an

atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. See

Sandin, 515 U.S. at 484; Jones v. Baker, 155 F.3d 810, 812 (6th Cir.1998); Mackey v. Dyke, 111

F.3d 460, 463 (6th Cir.), cert. denied, 522 U.S. 848, 118 S.Ct. 136, 139 L.Ed.2d 84 (1997); Rimmer-

Bey, supra. The plaintiff has not alleged any basis for concluding that his placement in

administrative segregation rises to the level of an atypical and significant hardship in relation to the

ordinary incidents of prison life. The plaintiff asserts that he has been kept in administrative

segregation continuously since June 2012. However, the plaintiff has not shown that this length of

time is atypical in comparison to the ordinary incidents of prison life. Compare Harden–Bey v.

Rutter, 524 F.3d 789 (6th Cir. 2008) (inmate's allegation of confinement in administrative

segregation for over three years was sufficient to raise question about whether such confinement was

atypical and significant in relation to the ordinary incidents of prison life) with Jones v. Baker, 155

F.3d 810 (6th Cir. 1998) (inmate's confinement in administrative segregation for two and one-half

years did not rise to level of an atypical and significant hardship for due process purposes). In addition, there is no evidence that any of the named Defendants had any role in the plaintiff's continued placement in administrative segregation after his transfer from the RMSI to Bledsoe, which occurred approximately one year after his current placement in administrative segregation.

Furthermore, the plaintiff's own allegations and supporting documents show that RMSI prison officials did provide him with some measure of procedural process upon both his initial placement and continued confinement in administrative segregation. Each of the plaintiff's placements in administrative segregation occurred pursuant to a written placement recommendation that was reviewed by prison officials. He was also afforded monthly written reviews of his placement in administrative segregation. Additionally, the plaintiff himself alleges that his first placement in administrative segregation was reviewed and he was released pursuant to this review. This indicates that the reviews conducted by prison officials were not meaningless.

The Due Process Clause is not violated because the plaintiff disagrees with the decisions made by prison officials. Nor is the plaintiff entitled to any type of in depth explanation from prison officials of the reasons for his placement in administrative segregation. See Rodgers v. Johnson, 56 F. App'x 633, 636 (6th Cir. 2002). The decisions about the exact manner of the plaintiff's confinement within the prison is simply a matter left to the discretion of prison officials. Rimmer-Bey, supra. Although the Fourteenth Amendment does prohibit inmates from being indefinitely confined in administrative segregation without meaningful review, see Selby v. Caruso, 734 F.3d 554 (6th Cir. 2013) (inmate kept in administrative segregation for thirteen years), the acts of the RMSI officials about which the plaintiff complains are simply not inconsistent with the Due Process Clause under the facts alleged by the plaintiff. See Harris v. Caruso, 465 F. App'x 481, 485 (6th Cir.

10

Feb. 29, 2012), cert. denied, 133 S. Ct. 429, 184 L. Ed. 2d 263 (2012) (prison officials complied with due process requirements by providing periodic reviews to prisoner who had been confined in administrative segregation for eight years); Williams v. Vidor, 67 F. App'x 857, 860 (6th Cir. 2003) (periodic review of an inmate kept in administrative segregation for nine years satisfied due process); Bean v. McQuiggin, 2008 WL 4151351 (W.D. Mich. Sept. 2, 2008) (prison officials complied with due process requirements by providing reviews every six months to prisoner who had been confined in administrative segregation for eight years).

Although the plaintiff refers to the Eighth Amendment's protection against cruel and unusual punishment as a basis for his claims, he has not alleged any facts supporting an Eighth Amendment claim. An inmate's placement in segregation is part of the routine discomfort that is a part of incarceration and does not, standing alone, implicate Eighth Amendment concerns. Harden-Bey, 524 F.3d at 795-96. Similarly, although the plaintiff refers to the First Amendment as a basis for his claims, he has not alleged any fact supporting a claim that his First Amendment rights have been violated.

The plaintiff's final claim is an equal protection claim that he has been discriminated against because he is black. The plaintiff sought to be moved from Level III to Level II while at the RMSI but was apparently told that he could not because an internal affairs hold had been lodged against him.[3] However, the plaintiff points to a prison document which he contends shows that an inmate in administrative segregation who is white was on Level II even though the inmate had an internal

_____

[3] Although neither party provided an explanation of the meaning of Level II and Level III, the Court assumes having a Level II status in administrative segregation affords an inmate with less restrictive conditions than having a Level III status.

affairs hold lodged against him.  See Docket Entry No. 1-10, at 2.  In response to the plaintiff's

written grievance about the matter, a prison official stated:

> This matter is being looked at by me and will be further reviewed.  Bear in mind
> every individual is reviewed on their own basis.  What happens with another
> individual may not happen with you or just the opposite.  Continued to be looked at.

See Docket Entry No. 1-9, at 3.

The Court must take the facts alleged by the plaintiff to be true for the purposes of the motion

to dismiss.  The Court nonetheless finds that the plaintiff has not alleged sufficient facts  to support

a claim for relief against any of the named defendants.  First and foremost, the plaintiff's allegations

fail to implicate any of the named defendants in the decision to prevent him from moving to Level

II and thus there is no basis upon which individual liability against any of the named defendants

could be found.

Second, although the purpose of the Equal Protection Clause of the Fourteenth Amendment

is to prevent official conduct discriminating on the basis of membership in a suspect class, see

Washington v. Davis, 426 U.S. 229, 239, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Equal Protection

Clause does not require the exact same treatment of all persons nor prevent government officials

from exercising discretionary authority.  It is incumbent upon a prisoner asserting an equal protection

claim to prove the existence of some purposeful discrimination.  McCleskey v. Kemp, 481 U.S. 279,

292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); Arlington Heights v. Metropolitan Hous. Dev. Corp.,

429 U.S. 252, 265-66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); Copeland v. Machulis, 57 F.3d 476, 480

(6th Cir. 1995) (per curiam); Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990);

Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986).  There are no facts alleged that the plaintiff

was treated in a manner evidencing a racial prejudice against him or from which it can be inferred

that purposeful discrimination played a part in the decision to keep the plaintiff on Level III status. At best, the plaintiff has only alleged an isolated incident of differing enforcement of a prison regulation or policy, which is insufficient to support a claim of purposeful, racial discrimination. See Fletcher v. Chartrand, 1989 WL 14015, *1 (6th Cir. Feb. 22, 1989) (allegations that prison guard selectively enforced disciplinary regulation on racial grounds was insufficient to state a claim for relief).

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that motion to dismiss (Docket Entry No. 41) filed by Defendants Derrick Schofield, Jason Woodall, John Fisher, Roland Colson, David Castile, Terry Puckett, Jason Alan Smith, Hiram Tennyson III and Warren Tate be GRANTED and that this action be DISMISSED WITH PREJUDICE.[4]

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.

---

[4] Although the motion to dismiss was not filed on part of Defendant Harry Jones, the claims against Jones are the same as the claims against the moving defendants and dismissal of the action is likewise warranted in favor of Defendant Jones. This Report and Recommendation and the fourteen day period for objections to be filed by the plaintiff satisfy the procedural requirements for a sua sponte grant of dismissal to Defendant Jones under Rule 12(b)(6) for failure to state a claim. See Morrison v. Tomano, 755 F.2d 515, 516-17 (6th Cir. 1984). See also Yashon v. Gregory, 737 F.2d 547, 552 (6th Cir. 1984).

See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


JULIET GRIFFIN
United States Magistrate Judge